UNITED STATES DISTRICT
COURT DISTRICT OF
COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | |
| : | |
| v. : | Case No. 23 CR 452-3 (ABJ) |
| : | |
| **TYJUAN MCNEAL,** : | |
| : | |
| **Defendant.** : | |

**GOVERNMENT'S SENTENCING
MEMORANDUM**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits its memorandum in aid of sentencing. For the reasons herein, and per the plea agreement, the United States requests that the Court sentence defendant to a period of 120 months of incarceration followed by 3 years of supervised release on the count of Conspiracy to Commit Firearms Trafficking. The defendant was under supervision and on a GPS ankle monitor at the time of the instant offense. In support of this sentence, the government states the following:

   I.   **Factual Summary**

On December 13, 2023, at approximately 3:47 a.m., Anne Arundel County Police Department (AAPD) heard an audible alarm at A & D pawn shop, a Federal Firearms Licensee ("FFL"), located at 706 Crain Hwy, Glen Burnie, MD 21061. Once patrol officers arrived, a preliminary investigation revealed the pawn shop was burglarized, and numerous firearms were stolen. Patrol officers notified AAPD detectives who took control of the investigation and were able to review surveillance footage. **(Figure 1)**.

1



**Figure 1**

The surveillance depicted five defendants Vincent Alston, Juwon Anderson, CyJuan Hemsley, Tyjuan McNeal, and Niquan Odumn all of whom were wearing gloves and masks exiting two vehicles. Hemsley, Alston and a third individual who never exited the car arrived in a stolen red Hyundai. Anderson, McNeal and Odumn arrived in the second vehicle. Odumn, utilizing a portable saw, cut the locks on the pull-down security gate in front of the A&D pawn shop. Defendants then raised the security gate and Odumn used a crowbar to pry open the main entry door to the pawn shop. All five defendants then entered the pawn shop, took multiple firearms, and exited the store, repeating this pattern numerous times, before fleeing in both vehicles. **(Figure 2-4).** In total, the five defendants stole 34 firearms from the pawn shop. Alston, Hemsley and the third individual left in the red Hyundai while the remaining three

defendants, Anderson, McNeal and Odumn left in the second vehicle with the stolen firearms.



**Figure 2**



**Figure 3 – McNeal in pawn shop**



**Figure 4 – McNeal outside pawn shop**

Approximately half hour after the burglary, Hemsley got into a traffic accident and crashed the red Hyundai on I-295 going southbound at Kenilworth Avenue, NE, Washington, D.C. A witness, who was involved in the accident stated that his vehicle was rear ended by the red Hyundai causing his vehicle to spin out. After the accident, surveillance footage shows three individuals, including Alston and Hemsley exiting and walking away from the vehicle. **(Figure 5).**



**Figure 5**

When MPD officers arrived at the scene they recovered eight firearms from the vehicle. The eight firearms were located on the floor in the rear of the vehicle and were easily visible for officers to observe. **(Figure 6-8).**


**Figure 6**


**Figure 7**

Case 1:23-cr-00452-ABJ   Document 107   Filed 06/06/25   Page 6 of 15



**Figure 8**

MPD Officers also observed a damaged iPhone with a black case on the driver's seat floorboard of the red Hyundai with an open GPS route displayed on the screen. The visible ending address from the route showed 2660 Douglass Place SE, Washington, D.C. 20020. **(Figure 9).**



**Figure 9**

6

A review of the phone determined that the owner was defendant Alston. A review of text messages on the iPhone revealed the iPhone communicated with a contact labeled "Peezy" who was identified as defendant Anderson. In the messages exchanged, on December 13, 2023, at approximately 2:56 a.m., Anderson texted the address of the pawn shop to Alston "706 Crain hwy n glen Burnie MD 21061." He then followed up with another message, stating "thats the address to were we goin."

In addition, prior to the burglary, Alston's iPhone also shows a discussion on December 13, 2023, between 1:00 a.m. and 2:20 a.m., with McNeal's Instagram username "chasedemendz."

| | |
|---|---|
| chasedemendz: | Wya [Where you at] |
| chasedemendz: | Missed video calls |
| Alston's Iphone: | We getting da truck fool |
| chasedemendz: | I'm up too |
| chasedemendz: | Top |
| Alston's Iphone: | Sayless after we get it we ona way |
| Alston's Iphone | We coming up top |
| Alston's Iphone | Wya [Where you at] |
| chasedemendz: | Up top wya who you w [who you with] |
| Alston's Iphone: | Me stickz peezy my man who had da 8 ball coat |

Law enforcement identified Stickz as Odumn and the individual with the 8 ball coat as Hemsley. In essence, Alston in the above conversation with McNeal, is identifying all the individuals involved in the burglary. He identifies himself, Odumn as "stickz", Anderson as "peezy" and Hemsley to McNeal.

**Arrest of Tyjuan McNeal**

On March 22, 2024, at approximately 11:00 a.m., the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) special agents observed defendant exiting the front door of 804 52nd Street, NE, Washington, D.C. The ATF agents, wearing police identifiers, attempted to

7

arrest defendant but observed him reach towards his waistband and take off running on foot towards Hayes Street NE. As the defendant ran, law enforcement, observed a firearm fall to the ground that was in defendant's flight path. **(Figure 10).** The defendant was also seen running with a brown paper bag and was eventually arrested on Hayes Street, NE, Washington, D.C.



**Figure 10**

Law enforcement retraced the defendant's flight path and observed the firearm on the sidewalk of the 800 block of 52nd Street, NE. The firearm was a Glock, model 29, 10 millimeter pistol with one round of ammunition in the chamber. Furthermore, the sweatpants defendant was wearing at the time of his arrest was similar to the ones he was wearing at the time of the burglary.

The defendant was in possession of $693 and had a cross body bag. A search incident to arrest revealed approximately 10 factory packaged Suboxone strips, and approximately 30 individually packaged orange strips that were visually similar to Suboxone strips. The defendant was also arrested with the same phone number that places him at the A & D pawnshop at the time of the burglary.

A review of the phone revealed that the device searched for "power saws that cut through

metal" and "power saw portable" on December 9, 2023. After December 13, 2023, defendant tried to sell the stolen firearms using his phone. The phone has photographs of guns and pictures of the stolen firearms with corresponding prices. On December 22, 2023, a user asked "So these all the ones that's left" and defendant's phone responds and states "I gotta look and see, I'm going double check tonight but I know for fact I got the kp9" and stated "I got the fnp. 40 & colt.45 somebody bout to get the kp9 today im going let you know if they bullshittin." On December 23, 2023, defendant's phone texted "I got a g22."

### Tyjuan McNeal's Ankle Monitor

On December 13, 2023, McNeal was under supervision in his Assault With A Dangerous Weapon matter. A user texted defendant's phone and stated "Where the hell you was at didn't have to be in at ten." The user was most likely referring to defendant's supervision conditions. The defendant responded by sending a photograph of tinfoil and/or duct tape around what appears to be an ankle monitor. The user responded by stating "Okay you crazy that shit work." It is worth noting that defendant's GPS monitor **(Figure 11)** was working a few hours prior to the A & D Pawn Shop burglary and began actively working again a few hours after the burglary. It appears that defendant was attempting to disable his ankle monitor.



**Figure 11**

9

## II.   Procedural History

On March 21, 2024, defendant was charged by a superseding indictment for Conspiracy to Commit Firearms Trafficking in violation of 18 U.S.C. § 933(a)(1), (3) and other related charges. ECF 19. On March 12, 2025, defendant plead guilty to Conspiracy to Commit Firearms Trafficking. ECF 89.

## III.   Sentencing Factors

When determining the appropriate sentence, the district court should consider all of the applicable factors set forth in Title 18, United States Code, Section 3553(a). *See United States v. Gall*, 128 S. Ct. 586, 596 (2007). Indeed, the Guidelines themselves are designed to calculate sentences in a way that implements the considerations relevant to sentencing as articulated in Section 3553(a). *United States v. Rita*, 127 S. Ct. 2456, 2463-65 (2007). The Section 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the purposes of the statute; (3) the kinds of sentences available (4) the sentencing guidelines; (5) policy statements; (6) the need to avoid unwarranted sentence disparities; and (7) the need to provide restitution to any victims.

1. Statutory Penalties and the U.S. Sentencing Guidelines

The offense of Conspiracy to Commit Firearms Trafficking in violation of 18 U.S.C. § 933(a)(1), (3) carries a maximum sentence of 15 years of imprisonment and no more than 3 years of supervised release.

### A.   Offense Level Calculation

The government agrees that the base level offense is **20** pursuant (U.S.S.G. § 2K2.1(a)(4)(B)(i)(I)). In addition, **six** points are added because 34 firearms were stolen (U.S.S.G. § 2K2(b)(1)(c)), **two** points are added because the firearms were stolen (U.S.S.G. § 2K2.1(b)(4)(A),

10

**five** points are added because the defendant's transferred the firearms with the intent to dispose two or more of the firearms to individuals who were under a criminal justice sentence at the time of the offense or intended to use or dispose of the firearms unlawfully (U.S.S.G. § 2K2.1(b)(1)(C)), **four** points are added because the instant offense was connected to a burglary (U.S.S.G. § 2K2.1(b)(6)(b)).  Therefore, the adjusted offense level is **37**.

### B. Criminal History Category

The defendant has the following criminal convictions:

| Date | Offense | Case No. | Points | Guideline |
|---|---|---|---|---|
| Oct. 26, 2018 | Illegal Possession of a Firearm | CT180705X | 3 points | §4A1.1(a) |
| Sept. 1, 2016 | Assault With A Dangerous Weapon | 2016 CF3 9255 | 3 points | §4A1.1(a) |

Defendant has demonstrated acceptance of responsibility for the offense and the offense level is decreased by two levels under U.S.S.G. § 3E1.1(a) and an additional level under U.S.S.G. § 3E1.1(b).  Therefore, the defendant's total offense level is **34**.  The government agrees that the defendant's guideline range is **188** months to **235** months

### IV. Argument

The defendant's criminal history is troubling as he was under supervision at the time of the instant offense and was not only on a GPS monitor at the time of his arrest but was also found with a firearm.  On the day of defendant's arrest, he was scheduled to meet with his probation officer on a home visit.  Defendant has significant experience with the criminal justice system.  In 2016, at the age of 19 he was charged with Assault With a Dangerous Weapon in Washington, D.C.  He pled guilty and was sentenced to 48 months of incarceration suspend all but 24 months and 3 years of supervised probation. ECF 100 (presentence report) at 15. On July 23, 2019, defendant's probation was revoked, and he was sentenced to all of the 48 months.  *Id.*

In that case, defendant shot at another individual from a moving vehicle. *Id.* In 2018, at the age of 21 defendant was arrested for illegal possession of a firearm in Prince George's County, Maryland. He pled guilty and was sentenced to three years of incarceration all but one year and 128 days suspended. *Id.* at 18.

In the instant case, defendant is escalating his criminal behavior in a serious and brazen manner. Defendant travelled from Washington D.C. to Maryland, committed a burglary, stole multiple firearms, came back to Washington D.C. and then advertised the stolen firearms on his phone all while on an ankle monitor wrapped in tin foil. **(Figure 12).** Furthermore, defendant's phone had multiple pictures of firearms on his phone.



**Figure 12**

The 34 stolen firearms are dangerous. To date, law enforcement has recovered close to

half of the stolen firearms. On December 28, 2023, law enforcement recovered four of the stolen firearms in an unrelated matter when executing a search warrant at an apartment. On August 2024, a Springfield 9 millimeter pistol from the pawn shop was recovered from a suspect's bookbag. On December 2024 law enforcement recovered a Glock 25 from a suspect who they believed was involved in an auto theft. On January 2025, law enforcement recovered a Kalashnikov rifle stolen from the pawn shop in a violent crime investigation.

Courts have recognized the inherent dangerousness of carrying a concealed, loaded firearm on one's person. *See United States v. Gassaway,* 21-CR-550 (RCL), ECF No. 9 (D.D.C. Sept. 16, 2021) ("This Court agrees with other courts in this district that unlawfully carrying a concealed or loaded firearm in public poses a risk of danger to the public."); *see United States v. Cole*, 459 F. Supp. 3d 116, 120 (D.D.C. 2020) (noting that a loaded firearm "has the great potential to escalate into violence," particularly when the defendant's prior conviction indicate a predilection for violence). The Defendants crimes are not isolated from the community he lives in, rather by trafficking firearms they directly affect the community and the people who live in it. Each trafficked firearm has the potential to cause havoc, serious injury or even death. This is evident as law enforcement continues to arrest individuals not connected to the burglary with the stolen firearms. Indeed, gun violence continues to be a problem in the city as five people were fatally shot in one weekend over this past month: https://www.washingtonpost.com/dc-md-va/2025/05/19/washington-district-five-shootings/ (last visited June 4, 2025).

The defendant himself, is not a stranger to gun violence. At the age of 16, he was caught in a cross-fire and was shot in his foot. At the age of 18, he was again in a cross-fire and was shot in his right leg. ECF 100 (presentence report) at 25. These incidents unfortunately have not dissuaded the defendant from being around firearms. On November 20, 2023, three

weeks prior to the instant offense, defendant was arrested and charged with Unlawful Possession of a Firearm during the execution of a search warrant at 2702 Douglas Place, SE. *Id.* at 20. The matter was dismissed, but numerous firearms and ammunition were found in the house, and McNeal was one of the occupants in the house. Three weeks after this arrest, defendant committed the instant offense. Defendant's action coupled with his criminal history and his complete and utter disregard of his supervision conditions is very concerning. He must be held accountable for actions, and 120 months is an appropriate sentence when accounting for the enormity of the crime.

### V. Conclusion

For the foregoing reasons, the government recommends that the Court sentence the defendant to 120 months of incarceration and it be followed by 3 years of supervised release. The government submits that a sentence of 120 months of imprisonment is an appropriate sentence, which serves to protect the community, punish the defendant for his criminal conduct, and deter others from committing similar offenses, while also affording the defendant an opportunity at rehabilitation. The government submits that a sentence of 120 months serves the interests of justice and appropriately balances the sentencing factors under 18 U.S.C. § 3553(a).

        Respectfully Submitted,
        JEANINE FERRIS PIRRO
        United States Attorney


BY:     /s/
        SHEHZAD AKHTAR
        D.C. Bar No. 493635
        Assistant United States Attorney
        United States Attorney's Office
        601 D Street, N.W.
        Washington, D.C. 20530
        Telephone: (202) 252-7498
        E-mail: Shehzad.Akhtar@usdoj.gov