**UNITED STATES DISTRICT COURT DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | **Case No. 23 CR 452-1 (ABJ)** |
| | : | |
| **VINCENT ALSTON,** | : | |
| | : | |
| Defendant. | : | |

<u>**GOVERNMENT'S SENTENCING MEMORANDUM**</u>

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits its memorandum in aid of sentencing. For the reasons herein, and per the plea agreement, the United States requests that the Court sentence defendant to a period of 120 months of incarceration followed by 3 years of supervised release on the count of Conspiracy to Commit Firearms Trafficking.[1] In support of this sentence, the government states the following:

I.        **Factual Summary**

On December 13, 2023, at approximately 3:47 a.m., Anne Arundel County Police Department (AAPD) heard an audible alarm at A & D pawn shop, a Federal Firearms Licensee ("FFL"), located at 706 Crain Hwy, Glen Burnie, MD 21061. Once patrol officers arrived, a preliminary investigation revealed the pawn shop was burglarized, and numerous firearms were stolen. Patrol officers notified AAPD detectives who took control of the investigation and were able to review surveillance footage. **(Figure 1)**.

---

[1] The Government originally calculated defendant's guidelines as between 235 months to 293 months, however, after further review and factoring in that defendant was one of the primary organizers of the burglary, defendant's guidelines increase by four levels. Regardless, defendant faces a statutory maximum of 180 months for the offense.



**Figure 1**

The surveillance depicted five defendants Vincent Alston, Juwon Anderson, CyJuan Hemsley, Tyjuan McNeal, and Niquan Odumn all of whom were wearing gloves and masks exiting two vehicles. Hemsley, Alston and a third individual who never exited the car arrived in a stolen red Hyundai. Anderson, McNeal and Odumn arrived in the second vehicle. Odumn, utilizing a portable saw, cut the locks on the pull-down security gate in front of the A&D pawn shop. Defendants then raised the security gate and Odumn used a crowbar to pry open the main entry door to the pawn shop. All five defendants then entered the pawn shop, took multiple firearms, and exited the store, repeating this pattern numerous times, before fleeing in both vehicles. **(Figure 2-3).** In total, the five defendants stole 34 firearms from the pawn shop. Alston, Hemsley and the third individual left in the red Hyundai while the remaining three

defendants, Anderson, McNeal and Odumn left in the second vehicle with the stolen firearms.



**Figure 2 – Alston in pawn shop**

Approximately half hour after the burglary, Hemsley got into a traffic accident and crashed the red Hyundai on I-295 going southbound at Kenilworth Avenue, NE, Washington, D.C. A witness, who was involved in the accident stated that his vehicle was rear ended by the red

Hyundai causing his vehicle to spin out.    After the accident, surveillance footage shows three individuals, including Alston and Hemsley exiting and walking away from the vehicle. **(Figure 3).**



**Figure 3**

When MPD officers arrived at the scene they recovered eight firearms from the vehicle. The eight firearms were located on the floor in the rear of the vehicle and were easily visible for officers to observe. **(Figure 4-6).**



**Figure 4**



**Figure 5**



**Figure 6**

MPD Officers also observed a damaged iPhone with a black case on the driver's seat floorboard of the red Hyundai with an open GPS route displayed on the screen. The visible ending address from the route showed 2660 Douglass Place SE, Washington, D.C. 20020. **(Figure 7).**



**Figure 7**

A review of the phone determined that the owner was defendant Alston. A review of text messages on the iPhone revealed the iPhone communicated with a contact labeled "Peezy" who was identified as co-defendant Anderson. In the messages exchanged, on December 13, 2023, at approximately 2:56 a.m., Anderson texted the address of the pawn shop to Alston "706 Crain hwy n glen Burnie MD 21061."  He then followed up with another message, stating "thats the address to were we goin."

In addition, Alston's iPhone also shows a discussion on December 13, 2023, between 1:00 a.m. and 2:20 a.m., with an Instagram username "chasedemendz." "Chasedemendz" has been identified as co-defendant McNeal:

| | |
|---|---|
| chasedemendz: | Wya [Where you at] |
| chasedemendz: | Missed video calls |
| Alston's iPhone: | We getting da truck fool |
| chasedemendz: | I'm up too |
| chasedemendz: | Top |
| Alston's iPhone: | Sayless after we get it we ona way |

| | |
|---|---|
| Alston's iPhone | We coming up top |
| Alston's iPhone | Wya [Where you at] |
| chasedemendz: | Up top wya who you w [who you with] |
| Alston's iPhone: | Me stickz peezy my man who had da 8 ball coat |

Law enforcement identified Stickz as Odumn and the individual with the 8 ball coat as Hemsley. In essence, Alston in the above conversation is identifying all the individuals involved in the burglary. He identifies himself, Odumn as "stickz", Anderson as "peezy" and Hemsley immediately prior to the burglary.

## II.    Procedural History

On December 15, 2024, defendant was charged by complaint for Unlawful Possession of a Firearm and Ammunition by a Person Convicted of Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. § 922(g)(1). ECF 1. On December 21, 2024, defendant was indicted on three counts where the lead count was Conspiracy to Commit Firearms Trafficking in violation of 18 U.S.C. § 933(a)(1), (3). ECF 7. On March 21, 2024, the government filed a superseding indictment indicting the remaining three defendants, Hemsley, McNeal and Odumn. ECF 19. On March 6, 2025, defendant pled guilty to Conspiracy to Commit Firearms Trafficking in violation of 18 U.S.C. § 933(a)(1), (3). ECF 86.

## III.    Sentencing Factors

When determining the appropriate sentence, the district court should consider all of the applicable factors set forth in Title 18, United States Code, Section 3553(a). *See United States v. Gall*, 128 S. Ct. 586, 596 (2007). Indeed, the Guidelines themselves are designed to calculate sentences in a way that implements the considerations relevant to sentencing as articulated in Section 3553(a). *United States v. Rita*, 127 S. Ct. 2456, 2463-65 (2007). The Section 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the purposes of the statute; (3) the kinds of sentences

available (4) the sentencing guidelines; (5) policy statements; (6) the need to avoid unwarranted sentence disparities; and (7) the need to provide restitution to any victims.

        1.   <u>Statutory Penalties and the U.S. Sentencing Guidelines</u>

The offense of Conspiracy to Commit Firearms Trafficking in violation of 18 U.S.C. § 933(a)(1), (3) carries a maximum sentence of 15 years of imprisonment and no more than 3 years of supervised release.

        A.  <u>Offense Level Calculation</u>

The government calculates the base level offense as **22** (U.S.S.G. § 2K2.1(a)(3)).[2] In addition, **six** points are added because 34 firearms were stolen (U.S.S.G. § 2K2(b)(1)(c)), **two** points are added because defendant was found with a stolen firearm from the pawn shop (U.S.S.G. § 2K2.1(b)(4)(A)) when he was arrested,[3] **five** points are added because the defendant's transferred the firearms with the intent to dispose two or more of the firearms to individuals who were under a criminal justice sentence at the time of the offense or intended to use or dispose of the firearms unlawfully (U.S.S.G. § 2K2.1(b)(5)(C)), **four** points are added because the instant offense was connected to a burglary (U.S.S.G. § 2K2.1(b)(6)(b)) and an additional **four** points were added because defendant was an organizer of the criminal activity (U.S.S.G. § 3B1.1(a)). Therefore, the adjusted offense level is **42**.

---

[2] The government calculates the base level offense as 22 because defendant's prior conviction from Prince George's County, Maryland of Conspiracy to Commit Robbery as a crime of violence pursuant to U.S.S.G. § 4B1.2(d).

[3] The cumulative offense level from the applications of 2K2.1(b)(1) through 2K2.1(b)(4) may not exceed level 29.

B.  Criminal History Category

The defendant has the following criminal convictions and nine criminal history points:

| July 17, 2023 | Rogue & Vagabond | CT180705X | 2 points §4A1.1(b) |
| December 8, 2022 | Conspiracy to Commit Robbery | CT210035X | 2 points §4A1.1(c) |
| | Defendant was on Probation at the time of the offense. | | 1 point §4A1.1(b) |
| July 18, 2022 | Conspiracy – Theft: $1500 to Under $25000 | C-08-CR-22-000045 | 2 points §4A1.1(b) |
| November 13, 2019 | Enter Building Night | GC19157892-00 | 2 points §4A1.1(b) |

Defendant has demonstrated acceptance of responsibility for the offense and the offense level is decreased by two levels under U.S.S.G. § 3E1.1(a) and an additional level under U.S.S.G. § 3E1.1(b).  Therefore, defendant's total offense level is **39**. Defendant has a guideline range of **360** months to **life.**

IV.    **Argument**

The defendant's criminal history is extensive and troubling as he was under supervision at the time of the instant offense. In 2023, at the age of 21, he was charged with Rogue and Vagabond in Howard County, Maryland.  He pled guilty and was sentenced to 90 days in jail. He was released from jail on September 15, 2023, two months priors to the instant offense. ECF 106 (presentence report) at 18.  In that case defendant was with three other suspects and trying to break into vehicles. *Id.*  As in the instant case, defendant arrived at the scene in a stolen vehicle. When officers arrived, defendant tried to run away but was eventually arrested after a foot chase.

*Id.* Niquan Odumn, a co-defendant in the instant case was arrested on scene as well. *Id.*

In 2021, at the age of 20, defendant was charged with Conspiracy to Commit Theft: $1500 to under $25,000 and other related charges in Charles County, Maryland. In 2022, defendant pled guilty and was sentenced to 5 years of incarceration all but 218 days suspended and 3 years probation. *Id.* at 16. Defendant violated probation in October 2023, his probation was continued, and he was released from custody two months prior to the instant offense. *Id.* at 17. In 2020, at the age of 19, defendant was charged with Conspiracy to Commit Robbery in Prince George's County, Maryland. *Id.* at 15. In 2021, defendant pled guilty and was sentenced to 10 years incarceration with 9 years, 1 month and 19 days suspended, and 3 years of supervised probation. *Id.* A warrant for a probation violation was issued on March 2022, and served on July 2022. *Id.* Then a bench warrant was issued on April 2023, and served on May 2023. *Id.* Defendant was released from custody on October 2023, and then failed to report for supervision. *Id.*

Defendant has been repeatedly committing crimes without regards for the consequences or for his conditions of release. The instant offense is serious and an escalation in defendant's criminal behavior as defendant was one of the primary organizers of the burglary. **(Figure 8).** Alston recruited other coconspirators to join and messaged co-defendant Odumn on December 12, 2023, that they were looking for a saw prior to the burglary.

| | |
|---|---|
| Alston's iPhone: | Wya [Where you at] |
| 2600_stickz: | I'm in da house |
| Alston's iPhone: | U staying in call trap we tryna get the saw |
| Alston's iPhone: | You coming out |

Cell site evidence has the defendants leaving to commit the pawn shop burglary from Alston's apartment complex, 2600 Douglas Place, SE. Furthermore, defendant was arrested at the address on December 15, 2023, and was found with one of the stolen firearms from the A &

D pawn shop, a Smith & Wesson, M&P 9 millimeter. **(Figure 9).**



**Figure 8**



**Figure 9**

Alston's Instagram (odv.vedo26) also exchanges messages with Anderson's Instagram (One man

army!) on December 14, 2023, one day after the burglary as they discuss the stolen firearms.  In

the message below, Alston is trying to get a firearm from Anderson by saying "My gurl tryna get

that iorn."  Alston also appears to inquire about additional firearms to sell by saying "U got sum

else that size."

| 12/14/2023 10:33:31 AM(UTC-5) | 50749605085 odv.vedo26 | Peezy |
|---|---|---|
| 12/14/2023 10:39:02 AM(UTC-5) | 49368297095 One man army! | Yea |
| 12/14/2023 10:39:27 AM(UTC-5) | 50749605085 odv.vedo26 | My gurl tryna get that iorn |
| 12/14/2023 10:39:43 AM(UTC-5) | 50749605085 odv.vedo26 | An section 8 tryna buy 1 frm sb |
| 12/14/2023 10:40:58 AM(UTC-5) | 50749605085 odv.vedo26 | U got sum else that size |
| 12/14/2023 10:42:16 AM(UTC-5) | 50749605085 odv.vedo26 | U dont got no more pistols |
| 12/14/2023 10:45:35 AM(UTC-5) | 50749605085 odv.vedo26 | Rd |
| 12/14/2023 10:45:41 AM(UTC-5) | 50749605085 odv.vedo26 | Were stickz |
| 12/14/2023 10:47:03 AM(UTC-5) | 49368297095 One man army! | Idk |

Alston also indicated that he had firearms to traffick on December 14, 2023, by messaging a different Instagram user to ask, "U need iorns."

In addition, to Alston and Anderson, co-defendant McNeal, who Alston communicated with immediately prior to the burglary sold the stolen firearms immediately after the offense. On December 13, 2023, after the burglary, McNeal sends multiple texts trying to sell firearms and sends a photo with a picture and prices of the firearms on his phone to another number. **(Figure 10).** On December 22, 2023, a user responds to McNeal and asks, "So these all the ones that's left." McNeal responds "I gotta look and see, I'm going to double check tonight but I know for a fact I got the kp9." He goes on to text "I got the fnp .40 & colt.45 somebody bout to get the kp9 today im going to let yu know if they bullshittin" and later texts "& I got a g22."



**Figure 10**

The 34 stolen firearms are dangerous, some maybe even considered weapons of war. To date, law enforcement has recovered close to half of the stolen firearms. On December 28, 2023, law enforcement recovered four of the stolen firearms in an unrelated matter when executing a search warrant at an apartment.  On August 2024, a Springfield 9 millimeter pistol from the pawn shop was recovered from a suspect's bookbag.  On December 2024 law enforcement recovered a Glock 25 from a suspect who they believed was involved in an auto theft.  On January 2025, law enforcement recovered a Kalashnikov rifle stolen from the pawn shop in a violent crime investigation.

Courts have recognized the inherent dangerousness of carrying a concealed, loaded firearm on one's person. *See United States v. Gassaway,* 21-CR-550 (RCL), ECF No. 9 (D.D.C.

Sept. 16, 2021) ("This Court agrees with other courts in this district that unlawfully carrying a concealed or loaded firearm in public poses a risk of danger to the public."); *see United States v. Cole*, 459 F. Supp. 3d 116, 120 (D.D.C. 2020) (noting that a loaded firearm "has the great potential to escalate into violence," particularly when the defendant's prior conviction indicate a predilection for violence). The Defendants crimes are not isolated from the community he lives in, rather by trafficking firearms they directly affect the community and the people who live in it. Each trafficked firearm has the potential to cause havoc, serious injury or even death. This is evident as law enforcement continues to arrest individuals not connected to the burglary with the stolen firearms. Indeed, gun violence continues to be a problem in the city as five people were fatally shot in one weekend over this past month: https://www.washingtonpost.com/dc-md-va/2025/05/19/washington-district-five-shootings/ (last visited June 4, 2025).

Defendant's action as one of the primary organizers of the burglary, breaking into the store, stealing the firearms and selling the firearms is very concerning. It required timing and forethought, all while defendant was under supervision for another offense. The defendant must be held accountable for his actions, and 120 months is an appropriate sentence when accounting for the enormity of the crime.

### V. Conclusion

For the foregoing reasons, the government recommends that the Court sentence the defendant to 120 months of incarceration and it be followed by 3 years of supervised release. The government submits that a sentence of 120 months of imprisonment is an appropriate sentence, which serves to protect the community, punish the defendant for his criminal conduct, and deter others from committing similar offenses, while also affording the defendant an opportunity at rehabilitation. The government submits that a sentence of 120 months serves

14

the interests of justice and appropriately balances the sentencing factors under 18 U.S.C. § 3553(a).

Respectfully Submitted,
JEANINE FERRIS PIRRO
United States Attorney


BY:    _____/s/____
SHEHZAD AKHTAR
D.C. Bar No. 493635
Assistant United States Attorney
United States Attorney's Office
601 D Street, N.W.
Washington, D.C. 20530
Telephone: (202) 252-7498
E-mail: Shehzad.Akhtar@usdoj.gov